**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
Nashville Division**

| | | |
|---|---|---|
| **GOOD L CORPORATION** | ) | Case No. 3:18-cv-00489 |
| | ) | |
| Plaintiff, | ) | Judge William L. Campbell, Jr. |
| | ) | |
| v. | ) | Magistrate Judge Jeffery S. Frensley |
| | ) | |
| **FASTENERS FOR RETAIL, INC. d/b/a** | ) | |
| **FFR MERCHANDISING, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Good L Corporation files this Amended Complaint for trade dress infringement against Fasteners for Retail, Inc. d/b/a FFR Merchandising, Inc., and states as follows:

## PARTIES

1. Good L Corporation ("Good L" or "Plaintiff") is a Tennessee Corporation having its principal place of business at 5382 Murfreesboro Road, LaVergne, Tennessee 37086.

2. Upon information and belief, FFR Merchandising, Inc. is a registered trade name for Fasteners for Retail, Inc. (hereinafter collectively "Defendant" or "FFR"), located at 8181 Darrow Road, Twinsburg Ohio 44087.

3. According to its Ohio filings, the registered agent for service of process for FFR is Corporation Service Company, 50 West Broad Street Suite 1330, Columbus Ohio 43215.

1

4. Upon information and belief, FFR does business through the website located at www.ffr.com.

5. The domain ffr.com is owned by Fasteners for Retail, Inc.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction for the trademark and trade dress infringement and unfair competition claims exists with respect to the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338 because trademark and trade dress infringement are federal questions under 15 U.S.C. § 1051 *et seq.* and unfair competition is a supplemental question arising out of the same facts and circumstances pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because:
   a. Defendant does business in the Middle District of Tennessee;
   b. Defendant has subjected itself to service in the Middle District of Tennessee;
   c. Defendant's infringing products are in use in stores in the Middle District of Tennessee;
   d. Defendant solicits customers located in the Middle District of Tennessee through the Defendant's website.

8. The Court has personal jurisdiction over Defendant because Defendant engages in business in Tennessee through its sale of the infringing product to AutoZone. Defendant has intentionally targeted customers in Tennessee and caused its products to be sold in commerce in Tennessee, including by selling the HANDBASKET1 product (as defined herein) to Tennessee customers. In particular, Defendant sold the HANDBASKET1 product to a customer in Tennessee with stores in Tennessee (AutoZone, a Tennessee entity), and caused that customer's name and trademark to be placed on the

2

HANDBASKET1 product, and allowed that HANDBASKET1 product to be used in Tennessee, showing Defendant's knowing and intentional entrance into commerce in Tennessee.

9. Similarly, the exercise of personal jurisdiction over Defendant comports with due process requirements of the United States Constitution because: (a) Defendant has purposefully established "minimum contacts" with the State of Tennessee by selling its product to AutoZone, and (b) the exercise of personal jurisdiction over Defendant will not offend the traditional notions of fair play and substantial justice because Defendant is causing infringement to occur in Tennessee. Therefore, this Court has specific and general jurisdiction over Defendant.

## BACKGROUND

10. In business since 1989, Good L is one of America's largest manufacturers and sellers of plastic shopping baskets.

11. Upon information and belief, Good L accounts for about thirty percent of baskets sold in the United States.

12. Upon information and belief, Good L is the only remaining shopping basket manufacturer that manufactures its product in the United States.

13. Good L has 30 employees, including 12 salespeople, six of whom travel the continental United States, and the other six who sell by telephone.

14. One product sold by Good L is the Big Basket, the company's original product and only product for the company's first three years in business.

15. Good L is the owner of a Certificate of Registration, No. 2,508,962, registered November 20, 2001 for the word mark "The Big Basket Company".

16. A photo of the Big Basket is shown below:



17. The specific trade dress of the Big Basket that is recognizable is, without limitation, the combination of the arbitrary and ornamental lattice work, and the large panel on the front and rear sides of the basket adjacent to the top rim.

18. The lattice work is non-functional and is not required for the use of the Big Basket product.

19. The large panel placed adjacent to the top rim is non-functional and is not required for the use of the Big Basket product.

20. Good L has been selling the Big Basket continuously since at least as early as July 4, 1989.

21. Since introduction, Good L has sold over 2,800,000 Big Baskets.

22. Good L has spent approximately $10,500,000 dollars promoting Big Baskets and its associated trade dress for the last 28 years.

23. Though not usually a consumer item, the Big Basket is used in retail stores to increase retail sales.

24. Good L has promoted the Big Basket in at least 900 trade shows for the last 28 years.

25. The Big Basket product is sold directly to retailers such as Auto Zone, and to other retail customers to use while shopping in their retail stores. The Big Basket product is also sold to wholesalers or brokers who sell the product to retailers.

26. Each trade show booth has included the following common law trade mark calling out and advertising the trade dress of the Big Basket ("Common Law Trademark"):



27. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is used on Trade Show fliers:



28. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is displayed on Good L letterhead:



29. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is shown on Good L envelopes:

5



30. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is shown on instructions forms:



31. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is used on Order Forms:



32. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is displayed on Good L invoices:



6

33. The Common Law Trademark calling out and advertising the trade dress of the Big Basket is displayed on Good L price lists:



34. Since at least as early as 1989, the 14-inch-by-9-inch packaging for the Big Basket sold by Good L has displayed the Common Law Trademark as shown below:



35. The Common Law trademark calling out and advertising the trade dress of the Big Basket is shown on the packaging as seen below:



36. The Big Basket trade dress has developed secondary meaning through its extensive sales, its substantial continuous and exclusive use, its being called out in the Common Law Trademark, and its extensive promotion.

37. As a result of its extensive sales, substantial continuous and exclusive use, its being called out in the Common Law Trademark, and its extensive promotion, the Big Basket trade dress has trademark and trade dress rights.

38. Consumers and retailers associate the Big Basket trade dress as originating from one source even if that source is not known.

39. The Big Basket trade dress indicates source, origin, sponsorship, or affiliation with the quality of the producer of the Big Basket.

40. The Big Basket trade dress is a symbol or device as defined by trademark law including the Lanham Act.

41. The relevant trade dress features of the Big Basket trade dress are not functional.

## INFRINGING ACTIVITY

42. FFR has been selling a product that it calls HANDBASKET1.

43. A photo of HANDBASKET1 is shown below on the left with the Big Basket shown on the right:



44. A photo of HANDBASKET1 with upright handles is shown below on the left and the Big Basket with upright handles on the right:

8



45. HANDBASKET1 is or appears to be a direct copy of the Big Basket.

46. HANDBASKET1 is obviously and perceptively identical to the Big Basket.

47. HANDBASKET1 infringes the trade dress of the Big Basket.

48. HANDBASKET1 uses a non-functional design that is confusingly similar to the trade dress of the Big Basket because HANDBASKET1 uses the same or similar arbitrary and ornamental lattice work in combination with a large panel on the sides of the basket attached to the rim.

49. The HANDBASKET1 product is sold to retailers for retail customers to use while shopping in their retail stores and is sold to wholesalers, distributors, or brokers who sell the products to retailers.

50. The HANDBASKET1 product and the Big Basket product are used for the same purposes and are sold to the same purchasers and consumers.

51. The HANDBASKET1 product is sold through wholesalers, distributors, or brokers at trade shows and other outlets as well as directly to consumers.

52. FFR sells HANDBASKET1 because the relevant consumers recognize that the Big Basket is a known and reputable product, and FFR is seeking to provide the same product design sought by the relevant consumers.

53. HANDBASKET1 is made of inferior material causing the product to fail more quickly than the Big Basket.

54. The HANDBASKET1 logo on the panels scratches much more easily.

55. The HANDBASKET1 uses filler materials in the handles that appear to affect the strength.

56. The HANDBASKET1 color appears to fade more quickly.

57. Failure of a shopping basket causes retail customers and users to be unsatisfied and can lead to injury. Such negative effects, and the failure of a shopping basket generally, cause a negative association with the Big Basket brand.

58. FFR's use of the confusingly similar HANDBASKET1 is likely to confuse consumers as to the source or affiliation with the Big Basket. Such confusion is harmful to Good L and has caused damage to Good L especially because consumers are not aware that the failing product belongs to FFR and not Good L.

59. If HANDBASKET1 product fails, that failure will likely be associated with the Big Basket.

## CAUSES OF ACTION

### Count I – Trade Dress Infringement and Unfair Competition (15 U.S.C. § 1125)

60. Good L realleges and incorporates by reference each of the other numbered paragraphs as if fully set forth herein.

61. Good L owns the Big Basket.

62. The Big Basket has accrued trade dress rights in its non-functional design elements.

63. Defendant, in selling HANDBASKET1, infringes the trade dress rights owned by GOOD L in and to the Big Basket.

64. Defendant are thus in violation of 15 U.S.C. § 1125.

65. Such acts by Defendant cause Good L irreparable harm as to which Good L is entitled to a permanent injunction pursuant to 15 U.S.C. § 1116.

66. Such acts by Defendant further cause harm to Good L as to which Good L is entitled to recover actual damages, Defendant's profits, and the costs of the action pursuant to 15 U.S.C. § 1117 as well as the costs of any necessary corrective advertising.

67. Defendant has willfully and intentionally adopted trade dress confusingly similar to the Big Basket, and Defendant's acts of infringement constitute willful infringement.

68. Given that Defendant's conduct is intentional and willful, Good L is entitled to an accounting of profits, attorneys' fees, and multiplied damages pursuant to 15 U.S.C. § 1117.

*Count II – Trademark Infringement and Unfair Competition (15 U.S.C. § 1125)*

69. Good L realleges and incorporates by reference each of the other numbered paragraphs as if fully set forth herein.

70. Defendant, in selling HANDBASKET1, infringes the Common Law Trademark.

71. HANDBASKET1 creates a likelihood of confusion among the consuming public as to source, origin, sponsorship, and/or affiliation, and Tennessee consumers are likely to be confused by the use and sale of HANDBASKET1 in Tennessee.

72. Defendant are thus in violation of 15 U.S.C. § 1125.

73. Such acts by Defendant cause Good L irreparable harm as to which Good L is entitled to a permanent injunction pursuant to 15 U.S.C. § 1116.

74. Such acts by Defendant further cause harm to Good L as to which Good L is entitled to recover actual damages, Defendant's profits, and the costs of the action pursuant to 15 U.S.C. § 1117 as well as the costs of any necessary corrective advertising.

75. Defendant has willfully and intentionally adopted a mark confusingly similar to Good L's GOOD L Marks, and their acts of infringement constitute willful infringement.

76. Given that Defendant's conduct is intentional and willful, Good L is entitled to an accounting of profits, attorneys' fees, and multiplied damages pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, Good L respectfully prays that this Court grant the following relief:

A. That the Court enter injunctive relief, ordering that Defendant, as well as their franchisees, officers, agents, servants, employees, attorneys, affiliates, and all others in active concert or participation with them, are enjoined and restrained from:

1. Using and/or selling any product infringing the Big Basket Trade Dress and/or any product likely to create confusion with the Big Basket;

2. Engaging in any conduct that infringes the Common Law Trademark;

B. That the Court enter permanent injunctive relief ordering Defendant, in accordance with 15 U.S.C. § 1116, to file a verified report with this Court within thirty (30) days of the Court's entry of the order for injunctive relief, specifying in detail the manner and form in which Defendant has complied with the injunction and order of this Court.

C. That the Court award Good L damages, an accounting of profits, and attorneys' fees and costs in an amount to be determined at trial;

D. That the Court award Good L multiplied damages because of Defendant's willful wrongful conduct;

12

Case 3:18-cv-00489   Document 13   Filed 06/25/18   Page 12 of 14 PageID #: 43

E. That the Court deem this to be an exceptional case;

F. A trial by jury as to all issues; and

G. That the Court award such further relief as is merited under law and equity.

Respectfully submitted,

/s/ Edward D. Lanquist, Jr.
Edward D. Lanquist, Jr. (TN BPR 13303)
Scott M. Douglass (TN BPR 31097)
Patterson Intellectual Property Law, P.C.
Suite 500, Roundabout Plaza
1600 Division Street
Nashville TN 37203
(615) 242-2400
edl@iplawgroup.com
smd@iplawgroup.com

*Attorneys for Plaintiffs Good L Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing AMENDED COMPLAINT was served, in accordance with LR 5.04 of the Local Rules of this Court, via the Court's CM/ECF system on June 25, 2018, upon counsel for all defendants, including:

Stephen J. Zralek
BONE MCALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
szralek@bonelaw.com

William B. Berndt, *Pro Hac Vice*
Honigman Miller Schwartz and Cohn LLP
155 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
wberndt@honigman.com

                                                /s/Edward D. Lanquist, Jr.
                                                Edward D. Lanquist, Jr.